1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LA CARRIERS, LLC, as owner   * CIVIL NO. 13-6731
and operator of the
M/V TRISTEN                  * JUDGE ELDON E. FALLON

VERSUS                       * MAGISTRATE ALMA L. CHASEZ

FIVE B'S, INC., in personam  * SECTION L(5)
M/V BEVERLY G. BARRIOS, in rem
* * * * * * * * * * * * * * * * * * * * * * * *

      The deposition of CAPTAIN JEFF WALSH, taken in connection with the captioned cause, pursuant to the following stipulations before Lauren Alesi Gaspard, Certified Court Reporter, at the Courtyard by Marriott, 142 Library Boulevard, Houma, Louisiana 70360, on the 3rd day of February 2015, beginning at 9:55 a.m.


DEFENDANT'S EXHIBIT

```
 1   APPEARANCES:

 2

 3   FOR THE PLAINTIFF, JODY BERNARD:

 4        MR. JASON WELBORN

 5        JOSEPH F. GARR, JR., APLC

 6        617 SOUTH BUCHANAN STREET
          LAFAYETTE, LOUISIANA 70501
 7

 8   FOR THE PLAINTIFF, LA CARRIERS, LLC, as owner and
     operator of the M/V TRISTEN:
 9
          MR. R. PATRICK RAY
10        FRILOT, LLC
          1100 POYDRAS STREET, SUITE 3700
11        NEW ORLEANS, LOUISIANA 70163

12
     FOR THE DEFENDANT, FIVE B'S, INC., TOTAL MARINE
13   LOGISTICS AND M/V BEVERLY G. BARRIOS:

14        MR. JEFF D. PEULER
          STAINES & EPPLING
15        3500 NORTH CAUSEWAY BOULEVARD, SUITE 820
          METAIRIE, LOUISIANA 70002
16

17   FOR THE DEFENDANT, ENTERPRISE MARINE SERVICES, LLC:

18        MR. WILLIAM C. BALDWIN
          JONES WALKER, LLP
19        201 ST. CHARLES AVENUE, 48TH FLOOR
          NEW ORLEANS, LOUISIANA 70170
20

21   ALSO PRESENT:

22   TAYLOR DOSS-OBSERVING STUDENT

23

24

25
```

STIPULATION

It is hereby stipulated by and among counsel for plaintiff and counsel for defense that the deposition of

CAPTAIN JEFF WALSH

be taken before Lauren Alesi Gaspard, Certified Court Reporter, by counsel for the defense for all purposes, pursuant to notice and to the provisions of the appropriate statutes of the Code of Civil Procedure of the State of Louisiana.

The parties hereto waive all formalities in connection with the taking of said deposition, except the reading and signing thereof, the swearing of the witness and the reduction of the questions and answers to typewriting.

Counsel for all parties reserve all objections, except as to the form of the question and responsiveness of the answer, at the time of taking said deposition, but they also reserve the right to make objections at the time said deposition or any part thereof may be offered in evidence, with the same rights as if the testimony had been taken and given in Open Court.

\* \* \*

```
 1          cutting him off?
 2          MR. WELBORN:
 3               Object to form.
 4          MR. RAY:
 5               Object.
 6   MR. PEULER:
 7   Q   At first.
 8   A   No.
 9   Q   I'm referring to during this radio
10       communication that we're talking about, not
11       since or anything like that.
12   A   After he had been hit he said something, like,
13       he called and said, "You're involved, too."
14       And I said, "How?"  And he -- because I was
15       clear.
16   Q   Right.
17   A   And he said -- and he -- he just kind of
18       insisted.  I said, you know, "Explain to me how
19       I'm involved?  I've cleared you."
20   Q   Right.
21   A   And he said, "Well, you're involved."  And I
22       said, "Well," and thinking to myself, just him
23       saying that to keep running and the Coast
24       Guard, he's just been hit, so I said, "Well, I
25       don't think I am involved because I've already
```

| | | |
|---|---|---|
| 1 | | made my pass, but for your information here's |
| 2 | | my name, my telephone number, pass this on for |
| 3 | | my -- to the Coast Guard if they have any |
| 4 | | questions, have them call me." |
| 5 | Q | So you relayed your information to him. |
| 6 | A | Right. |
| 7 | Q | So, if the Coast Guard or anybody thought you |
| 8 | | were involved in this, they had a means to |
| 9 | | contact you if need be? |
| 10 | A | Right, if need be, correct. |
| 11 | Q | Any other communications between them, between |
| 12 | | you and the TRISTEN? |
| 13 | A | No. |
| 14 | Q | Okay. Did you communicate to the TRISTEN what |
| 15 | | the speeds were of your vessel and his vessel |
| 16 | | when you made the passing? |
| 17 | A | Not to my recollection. |
| 18 | Q | Okay. And this is where I'm a little bit |
| 19 | | confused is because in a -- I don't have the |
| 20 | | statement of Jody Bernard, but it's something |
| 21 | | that he had written and signed. I don't want |
| 22 | | to misquote. Based on this, the statement -- |
| 23 | | on the top of it, it says statement of Jody |
| 24 | | Bernard. And then it's signed Jody Bernard |
| 25 | | 2/25/13, and it had been an attachment to his |

```
 1         deposition, it appeared to me like there was
 2         another settoon vessel kind of up in the bend.
 3    A    Right.  He was right there around TPL.  And
 4         he's the one that said, "I'll put it to the
 5         bank if I need to."  And that, along that bank
 6         right there, is where they tie off tows waiting
 7         to go into that.  Like I say, this is my home
 8         territory, so I know this.  Right on the
 9         outside of Cenac Bend, starting from the
10         southern step right there and on the tight end
11         views they show a sunk barge right about in
12         here.  And then right --
13    Q    That would be that sunken barge right there?
14    A    Yeah, right there.  And everywhere east of that
15         sunken barge you can get all the way into the
16         bank and catch lines in the trees to hold up.
17         So, if he needed to, he could have laid it on
18         the bank and been just the width of his barge
19         wide, but I never even had to have contact with
20         him again.  He said, "Is it all right if I go
21         ahead and jump around this tow so I can meet
22         it?"  And I said, "Well, you know, we're
23         getting pretty close."  He said, "Well, if I
24         have to, I'll put it on the bank."  I said,
25         "Fine with me."
```

1   A     I don't recall giving it to them, but I had the
2         information available to me and it's possible I
3         gave it to them I guess.
4   MR. PEULER:
5   Q     And if you would have given it, would it have
6         been in miles an hour?
7   A     It would have been in miles per hour.
8   Q     Okay.  Let's talk about -- you were asked some
9         questions about lookouts, you know, when you
10        need them, when you don't need them.
11  A     Correct.
12  Q     And there was mention that, you know, some
13        smaller boats hire somebody specifically just
14        to sit on the very front with a radio the
15        entire time to maintain a lookout at the very
16        bow of the either vessel or of the whatever is
17        being pushed, correct?
18  A     Correct.
19  Q     Can you also, if -- if your vision is limited
20        and you're in the wheelhouse, and if you have
21        other people in the wheelhouse, they can get
22        out and walk around the wheelhouse and not
23        necessarily walk to the very front of the
24        barge, but walk around the equipment to get a
25        view of what's ahead?  Would you consider that