UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LA CARRIERS, LLC, as owner and operator<br>Of the M/V TRISTEN | CIVIL ACTION |
| VERSUS | NO. 13-6731<br>c/w 14-203 |
| FIVE B'S INC., *in personam*<br>M/V BEVERLY BARROIS, *in rem* | SECTION "L" (5) |

## ORDER & REASONS

### I. BACKGROUND

This case arises from a vessel collision that resulted in injuries sustained to Plaintiff Jody Bernard and damages to the M/V TRISTEN, which is owned and operated by Plaintiff LA Carriers. Plaintiffs brought *in rem* claims against Defendants Five B's Inc. and Total Marine Logistics, LLC and *in personam* claims against the M/V BEVERLY G. BARROIS.[1] Plaintiffs brought their own, separate claims, but the Court consolidated those proceedings into the present case.

Five B's answered and invoked 46 U.S.C. § 30501 and Rule F of the Supplementary Rules of Certain Admiralty and Maritime Claims of the Federal Rule of Civil Procedure to limit any potential damages to the amount of Defendants' interest in the M/V BEVERLY BARROIS. Five B's also filed a Third Party Complaint against Enterprise Marine Services, LLC ("Enterprise Marine") and the M/V MANNIE. Enterprise Marine answered and filed Counterclaims against Plaintiffs Jody Bernard and LA Carriers and a Cross-Claim against Five B's. Enterprise Marine also plead 46 U.S.C. § 30501, the Limitation of Liability Act.

---

[1] These Defendants will hereinafter be referred to as "Five B's". The parties interchangeably refer to Defendants' tow as the M/V BEVERLY G. BARROIS and the M/V BEVERLY G. BARRIOS. As the Defendants consistently reference the M/V BEVERLY G. BARROIS, the Court will use that name.

## II. UNDISPUTED FACTS

On December 19, 2012, Plaintiff Jody Bernard was piloting the M/V TRISTEN eastbound on the Intercoastal Waterway through the Houma, Louisiana area. The M/V TRISTEN was a 1200 horsepower towboat and was pushing six loaded salt barges. (Rec. Doc. 48-3 at 5). Because of the size of the tow, the M/V TRISTEN qualified as an oversized tow under Coast Guard regulations, which required the M/V TRISTEN to "yield to the maximum" in passing situations. (Rec. Doc. 40-5 at 1). *See* 33 C.F.R. § 162.75(5)(i). Indeed, Plaintiff Bernard testified that "[e]verybody was running circles around me that day…You push six loaded barges and probably millions of tons of salt. They are all passing you up." (Rec. Doc. 48-3 at 5).

At the time of the incident at issue, Captain Jeff Walsh was piloting the M/V MANNIE, a 2400 horsepower towboat that was pushing two empty barges through the Houma, Louisiana area. (Rec. Doc. 48-2 at 51). Captain Walsh radioed the M/V TRISTEN to request permission for the M/V MANNIE to overtake the M/V TRISTEN. (Rec. Doc. 49-5 at 1). Plaintiff Bernard consented to the overtaking by the M/V MANNIE, and the M/V MANNIE overtook the M/V TRISTEN while the M/V MANNIE was traversing eastbound towards Cenac Bend. (Rec. Doc. 48-4 at 17; Rec. Doc. 49-5 at 1). In his deposition, Plaintiff Bernard testified that Captain Walsh did not ask Bernard to slow down but Bernard unilaterally made that decision, explaining that it is customary to slow down so that the other boat can pass as quickly as possible. (Rec. Doc. 48-3 at 25). The parties agree that the M/V TRISTEN slowed down and that the M/V MANNIE did not request this reduction of speed.

After the M/V MANNIE overtook the M/V TRISTEN, Captain Walsh radioed the M/V TRISTEN to confirm that the M/V MANNIE was "all clear." (Rec. Doc. 49-5 at 2). After the

M/V MANNIE had passed the M/V TRISTEN, the M/V BEVERLY G. BARROIS collided with the stern of the M/V TRISTEN. The M/V BEVERLY G. BARROIS was a towboat pushing a 200 foot spud barge. Enterprise Marine now moves for summary judgment.

### III. MOTION FOR SUMMARY JUDGMENT (Rec. Doc. 48)

Enterprise Marine filed this Motion for Summary Judgment and argues that the undisputed material facts demonstrate that Enterprise Marine's actions did not constitute a substantial factor in the collision between the M/V TRISTEN and the M/V BEVERLY BARROIS. Enterprise Marine argues that the undisputed facts show that the M/V MANNIE overtook the M/V TRISTEN without incident and before the collision, and there is therefore no plausible argument that the M/V MANNIE's maneuvering caused the collision. Enterprise Marine contends that since the M/V TRISTEN constituted an "oversized tow" under the Coast Guard regulations, the M/V TRISTEN was required to yield to the M/V MANNIE. (Rec. Doc. 48-1 at 4) (citing 33 CFR 162.75(b)(5)(i)). Enterprise Marine highlights the depositions of Captain Walsh and Plaintiff Bernard, who both testified that the M/V MANNIE overtook the M/V TRISTEN without incident during their respective depositions. (Rec. Doc. 48-1 at 9-10). Captain Walsh also testified that the area where the maneuvering occurred was very wide, and Bernard testified that the M/V MANNIE overtaking was no different than numerous overtakings carried out by other vessels prior to the collision. Based on these facts, Enterprise Marine contends that the action undertaken by the M/V MANNIE cannot constitute the "substantial factor" of the collision, as required by General Maritime Law.

Five B's opposes the motion and argues that there are disputed material facts related to the collision's causation. Five B's argues that the M/V BEVERLY G. BARROIS deckhand and captain heard Bernard immediately radio Captain Walsh after the accident and scream at Walsh

that the M/V MANNIE had cut off the M/V TRISTEN and caused the collision. (Rec. Doc. 49 at 2). Five B's also argues that the Cenac Bend was not a proper place for the M/V MANNIE to overtake the M/V TRISTEN. Five B's highlights the affidavit of Captain Maurice Ryan, an expert in navigation, who states that the Cenac Bend was too crowded for the M/V MANNIE to overtake the M/V TRISTEN and concludes that these dangerous conditions signified a factor in the collision. (Rec. Doc. 49 at 2). The overtaking, Five B's maintains, caused the M/V TRISTEN to maneuver closer to the south bank and slow down in speed, ultimately resulting in the collision. Five B's thus avers that it remains a disputed fact as to whether Enterprise Marine caused the collision.

Enterprise Marine replies and argues that Five B's fails to cite a law or case that counters its argument that the regulations called for the M/V MANNIE to overtake the oversized M/V TRISTEN. (Rec. Doc. 57 at 2). Enterprise Marine claims that Five B's interpretation of the law "would turn the oversize tow regulations on their head and expose every overtaking vessel to liability despite a statutory framework that not only allows such overtaking but mandates the lead vessel to get out of the way." (Rec. Doc. 57 at 2). Enterprise Marine argues that Five B's cannot rely on inadmissible hearsay testimony of its former employees to contradict Bernard's deposition testimony. Finally, Enterprise Marine argues that Five B's expert, Captain Maurice Ryan, offers only conclusions without providing any supporting evidence, and that the Court should therefore not rely on his affidavit to determine that there is disputed material fact as to causation. Enterprise Marine also contends that Ryan's affidavit does not support a finding that Enterprise Marine was a "substantial factor" in the collision, which is necessary under General Maritime Law.

Five B's filed a sur-reply and argues that a question of fact exists as to whether the M/V MANNIE "embarrassed the navigation" of the M/V TRISTEN when the M/V MANNIE overtook the M/V TRISTEN in a crowded bend with multiple obstructions. (Rec. Doc. 67-1 at 2) (citing *Cenac Towing Co. v. Keystone Shipping Co.*, 404 F.2d 698 (5th Cir. 1968)). Five B's argues that it understands the Inland Navigational Rules call for overtakings in the ICW but submits that the an overtaking "in the bend of a narrow, crowded channel with multiple navigational obstructions" is not proper under the rules. (Rec. Doc. 67-1 at 2). Five B's thus contends that "[w]hether or not this overtaking was dangerous, embarrassed the navigation of the M/V TRISTEN, and was a substantial factor in causing the incident is a disputed material fact that must be decided by the trier-of-fact." (Rec. Doc. 67-1 at 3). Five B's also submits an exhibit that shows that the M/V MANNIE aggressively increased its speed to avoid a collision with the M/V TRISTEN and the M/V LEXI SETTON, and that this action constituted a substantial factor in causing the M/V TRISTEN to "technically" run aground. (Rec. Doc. 67-1 at 3).

## IV. LAW AND ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* When considering a motion for summary judgment, the district court "will review the facts

drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"To establish maritime negligence, a plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, a breach of that duty, an injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *Canal Barge Co., Inc. V. Torch Oil Co.,* 220 F.3d 370, 376 (5th Cir.2000) (quoting *In re Cooper/T. Smith,* 929 F.2d 1073, 1077 (5th Cir.1991)) (internal quotations omitted). Maritime negligence is only actionable "if it is a legal cause of the plaintiff's injuries." *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir.1992). "[L]egal cause is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury." *Thomas v. Express Boat Co.,* 759 F.2d 444, 448 (5th Cir.1985).

In the instant case, both Captain Walsh and Captain Bernard testified that the M/V MANNIE's overtaking of the M/V TRISTEN did not effect the collision between the M/V TRISTEN and the M/V BEVERLY BARROIS because the M/V MANNIE had already passed without incident. This is compelling evidence in favor of Enterprise Marine's motion, which is further supported by the Coast Guard regulations requiring such passing, but Five B's highlights a disputed material fact that prevents this Court from granting summary judgment at this time. Namely, it remains a disputed material fact as to whether the Cenac Bend was crowded and thus not a suitable location for the M/V MANNIE to overtake the M/V TRISTEN. Five B's presents

this evidence in the form of two experts who relied on their experience and the underlying facts to testify to this conclusion. Based on this evidence, the Court finds there is a disputed material fact as to whether the conditions surrounding the Cenac Bend, and the M/V MANNIE's overtaking of the M/V TRISTEN under those conditions, constituted a "substantial factor" in the collision. Nevertheless, the Court notes that Enterprise Marine reserves the right to move for a Rule 52 Judgment as a Matter of Law after the facts are more fully developed.

    In support of its opposition, Five B's also submitted the depositions of its employees who testified to statements Bernard made after the incident when he allegedly screamed at Captain Walsh over the radio for causing the collision. Five B's contends that this testimony goes to the credibility of Bernard, as he later testified that Captain Walsh and the M/V MANNIE played no role in the collision. Enterprise Marine argues that these statements constitute inadmissible hearsay, but these statements are likely admissible under Federal Rules of Evidence 803(1) Present Sense Impression and/or 803(2) Excited Utterance. The Court makes no finding regarding the significance of this testimony, as the disputed material facts surrounding the Cenac Bend conditions compel this Court to deny summary judgment, but the Court nevertheless felt obligated to highlight this point.

## V. CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Enterprise Marine's Motion for Summary Judgment (Rec. Doc. 48) is hereby **DENIED.**

New Orleans, Louisiana this 20th day of April, 2015.

_____
UNITED STATES DISTRICT JUDGE